**FILED**

FEB 2 6 2008

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

Attorney(s) for Plaintiff(s)

Aleksandr L. Yufa,
698 Cypress Avenue,
Colton, CA 92324-1952
E-mail: ypesinc@msn.com
(909) 370-4454-phone/voice message,
(909) 370-1714-voice message/fax,
          IN PRO-SE

Case: 1:08-cv-00330
Assigned To : Leon, Richard J.
Assign. Date : 2/26/2008
Description: Pro Se general Civil

JURY ACTION

## UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

ALEKSANDR L. YUFA,
698 Cypress Avenue,
Colton, CA 92324-1952
(909) 370-4454-phone
          Plaintiff in Pro-Se


          VS.                    **CIVIL ACTION NO.**


                                 Related case No. CV06-3923 GPS (FFMx)
U.S. DEPARTMENT OF DEFENSE,      U.S. District Court, Central District of California
1000 Defense Pentagon,
Washington, D.C. 20301-1000.
          and                    **COMPLAINT FOR PATENT INFRINGEMENT**
"DOE-DEFENDANTS"
1 through 10,                          (DEMAND FOR JURY TRIAL)
          Defendants


## COMPLAINT

**1)** The First Listed Defendant - "United States Department of Defense" (hereinafter "DoD")

has a Principal Place of Business located in District of Columbia (20301-1000), Washington,

at 1000 Defense Pentagon.

-1-

Plaintiff - Aleksandr L. Yufa, Ph.D. (hereinafter "Yufa") is a citizen of California (92324), San Bernardino County, city of Colton at 698 Cypress Avenue, (909) 370-4454 phone/voice message, (909) 370-1714-voice message/fax.

**2)** Plaintiff has all rights to enforce the U.S. Patent No. 6,346,983 "METHODS AND WIRELESS COMMUNICATING PARTICLE COUNTING AND MEASURING APPA-RATUS" and U.S. Patent No. 6,034,769 "METHODS AND DEVICE FOR COUNTING AND MEASURING PARTICLES" against the believed infringement, and Plaintiff has an entire interest in the said patent.

**3)** On July 20, 2007, Yufa sent to DoD the letter (Certified Mail # 7007 0710 0002 2671 3779) [Exhibit **A** - a copy of the original document /letter/. P.S. Hereinafter all Exhibits of the mail correspondence (letters) and all E-mail correspondence are the true and correct copies of the original documents)], notifying DoD about the believed infringement with the offer to license or acquire the Yufa's U.S. Patent No. 6,346,983 [Exhibit No. 1, pages 1-1 through 1-20] (hereinafter " '983 patent" or "Yufa's '983 patent") and Yufa's U.S. Patent No. 6,034,769 [Exhibit No. 51, pages 51-1 through 51-15] (hereinafter " '769 patent" or Yufa's 769 patent"). {Both patents may be mentioned hereinafter as "Yufa's patents" or "Patents-In-Suit"}.

**4)** It is strongly believed that the method (claims 1 and 2) claimed in the Yufa's U.S. Patent No.: 6,346,983 (Exhibit No. 1) and the method (claims 1 through 3) claimed in the Yufa's U.S. Patent No.: 6,034,769 (Exhibit No. 51) are infringed by the U.S. Department of Defe-

-2-

nse by using at least the following product: modern wireless communicating "Biological

Aerosol Warning System" (a.k.a. as "BAWS"), including but not limited to "Tier"-family

systems, C/BAWS, etc.); "Biological Agent Warning System" (a.k.a. as "BAWS" too);

"Multipurpose Integrated Chemical Agent Alarm System" (a.k.a. as "MICAD"); "Chemical,

Biological and Radiological Early Warning System" (a.k.a. as "CBREWS"); "Building

Protection Systems Integration"; "MetroGuard"; "LaserNet Fines" (as to the plaintiff's best

knowledge, also may be known as "LNF", and the other possible and/or related titles un-

known to Yufa at this time) systems; "Unmanned Aerial Vehicle" (a.k.a. "UAV") operating

at least in compliance with the claims 1 and 2 of the Yufa's '983 patent, and the BAWS,

MICAD, CBREWS, "Building Protection Systems Integration",and "MetroGuard" also

operating at least in compliance with the claims 1 and 2 of the Yufa's '983 patent and with

the claims 1 through 3 of the Yufa's '769 patent. The possible other systems operating by

Yufa's patents and used by DoD may be discovered after DoD's voluntary disclosure, initial

disclosure and/or formal Discovery.

The DoD's use of the mentioned above particle monitoring systems/apparatus is not

limited to those systems only, and include but not limited to the other systems (unknown to

the Plaintiff at this time but which may be subsequently discovered later) operating at least

by the methods claimed in the mentioned above Yufa's '983 and '769 patents (for instance:

**a)** the DoD's use of the system(s) operating by allegedly invalid Lockheed Martin Corpora-

tion's US Patents Nos.: 6,792,795; 7,061,388; 7,073,748, etc.;

**b)** the DoD's use of the system(s) involved in the different DoD's Defense/Security Programs [e.g., the Military Programs such as JCAD, JBPDS, JCBAWM, JBREWS, etc.] and operating by the Yufa's patents). {P.S. The word "particle" has a wider meaning, including but not limited to: agent(s); airborne particle(s), gas particle(s), etc.; contamination(s), fluid contamination(s), liquid contamination(s), etc.; aerosol; etc. The word "system" has a wider meaning, including but not limited to: apparatus, means, device(s), unit(s), station(s), block(s), sensor(s), product, etc. The word "monitoring" has a wider meaning, including but not limited to: counting, measuring, analyzing, sampling, etc. The words "particle", "system", etc. have a singular or plural and vice versa meaning appropriately}.

**5)** The related suit "Aleksandr L. Yufa v. Lockheed Martin Corporation and Doe Defendants 1 through 10" [CV06-3923 GPS (FFMx)] has been filed on June 22, 2006 in the U.S. District Court, Central District of California, for the believed infringement of the defined herein above '983 and '769 patents [Exhibits Nos. 1 and 51] by manufacturing (making), offer for sale, and sale of the listed above product for the approximately estimated damage at the amount of $154,500,000.00 (based on the information, facts, and documents, there is a strong possibility of the willful infringement triplicating the calculated amount of damage).

**6)** It is believed that the following below information, fact(s), document(s), and evidence(s) support this Complaint:

On approximately July 05, 2005, Yufa, inventor of the US Patent No. 6,346,983 (Exhibit No. 1) had discovered the Patent Application Publication No. 2004/0043443A1 (Exhibit

No. 2, pages 2-1 through 2-10) and US Patent No. 6,777,228 (Exhibit No. 3, pages 3-1 through 3-9) both of Lockheed Martin Corporation (hereinafter "Lockheed"). After analysis of Patent Application Publication No.: 2004/0043443A1 (Exhibit No. 2), US Patent No.: 6,777,228 (Exhibit No. 3) and review of the Lockheed's Web-site, Lockheed has been notified about the believed infringement of the method (claims 1 and 2) claimed in the US Patent No. 6,346,983 (Exhibit No. 1) and the method (claims 1 through 3) claimed in the Yufa's U.S. Patent No.: 6,034,769 (Exhibit No. 51) with the offer of licensing or acquiring (Copy of Certified Mail # 7004 2890 0004 5975 5272 from July 07, 2005 [Exhibit No. 4].

{P.S. Hereinafter all Exhibits of the mail correspondence (letters) and all E-mail correspondence are the true and correct copies of the original documents}.

The initial "Claim Chart" comparison (Exhibit No. 5) has been attached to that letter (Exhibit No. 4), and the substantive technical information about Lockheed's product has been requested (there had not been discovered any published subjective/substantive technical details about product).

The product cease and desist could not be demanded, because the infringing product is intended and used for the human protection.

The informal investigation (in order to save Court's time) and search for Law Firm agreeing to take a legal Yufa's representation under mutually acceptable conditions have been started.

During mail and E-mail communication with Lockheed: the letter of July 13, 2005 [Exhi-

-5-

bit No. 6]) from Lockheed; the letter (Certified Mail # 7004 2890 0004 5975 5173 of July

15, 2005 [Exhibit No. 7]) to Lockheed; Brief Follow-Up Letters to Lockheed (Certified

Mail # 7004 2890 0004 5975 8617 from October 24, 2005 [Exhibit No. 8] and Certified

Mail # 7004 2890 0004 5975 5470 from October 24, 2005 [Exhibit No. 9]); letter from

Lockheed dated October 27, 2005 (Exhibit No. 10, pages 10-1 and 10-2); letter to

Lockheed (Certified Mail # 7004 2890 0004 5975 5418 from October 31, 2005 [Exhibit

No. 11, pages 11-1 through 11-3]); Brief Follow-Up Letters to Lockheed (Certified Mail #

7005 1820 0001 2228 8277 from November 28, 2005 [Exhibit No. 12]) and Certified Mail

# 7005 1820 0001 2228 8727 from November 28, 2005 [Exhibit No. 13]); Brief Follow-Up

Letter to Lockheed (Certified Mail # 7005 1820 0001 2228 8772 from December 05, 2005

[Exhibit No. 14]); letter from Lockheed dated December 08, 2005 [Exhibit No. 15, pages

15-1 and 15-2]; letter from Lockheed dated December 16, 2005 [Exhibit No. 16]; letters to

Lockheed (Certified Mail # 7005 1820 0001 2227 8797 from January 25, 2006 [Exhibit No.

17, pages 17-1 through 17-3]) and Certified Mail # 7005 1820 0001 2227 8780 from Janu-

ary 25, 2006 [Exhibit No. 18, pages 18-1 through 18-3]), Lockheed refused to provide any

requested technical and financial information, and visitation of its facilities with respect to

Biological Aerosol Warning Systems (a.k.a. as "BAWS"), Multipurpose Integrated Chemi-

cal Agent Alarm System (a.k.a. as "MICAD"), Chemical, Biological and Radiological Early

Warning System (a.k.a. as "CBREWS"), and Building Protection Systems Integration.

   Approximately at the end of February 2006, the Lockheed's systems "MetroGuard" and

"LaserNet Fines" systems (apparatus) believed operating at least in compliance with the method (Claims 1 and 2) claimed in the US Patent No. 6,346,938 have been additionally discovered during the continuing informal investigation. These two additionally discovered systems have been noticed in a Brief Follow-Up Letter to Lockheed (Certified Mail # 7005 1820 0003 1633 4773 from March 01, 2006 [Exhibit No. 19]). During the continuing mail and E-mail communication with Lockheed: letter from Lockheed dated March 03, 2006 [Exhibit No. 20]; E-mail to Lockheed, Re: "MetroGuard" from March 07, 2006 [Exhibit No. 21]; E-mail to Lockheed, Re: "MetroGuard" from March 09, 2006 [Exhibit No. 22]; E-mail from Lockheed, Re: "MetroGuard" from March 10, 2006 [Exhibit No. 23]; E-mail to Lockheed, Re: "MetroGuard" from March 10, 2006 [Exhibit No. 24, pages 24-1 and 24-2]; letter to Lockheed (Certified Mail # 7005 1820 0003 1633 4377 from March 11, 2006 [Exhibit No. 25]); E-mail from Lockheed, Re: "MetroGuard" from March 13, 2006 [Exhibit No. 26, pages 26-1 and 26-2]; E-mail to Lockheed, "Request for E-mail rapid response" from March 14, 2006 [Exhibit No. 27, pages 27-1 through 27-3]; E-mail to Lockheed, Re: "MetroGuard" from March 15, 2006 [Exhibit No. 28, pages 28-1 and 28-2]; E-mail to Lockheed, Re: MetroGuard from March 21, 2006 [Exhibit No. 29, pages 29-1 and 29-2]; letter from Lockheed from April 07, 2006 [Exhibit No. 30]), and letter to Lockheed (Certified Mail # 7005 1820 0001 2227 8872 from April 11, 2006 [Exhibit No. 31, pages 31-1 and 31-2]), Lockheed continued the refusal to cooperate and to provide any technical and financial information, and visitation of its facilities.

Considering the Lockheed's refusal to provide any technical information, the following accessible published information including the information published on the Lockheed's Web-site, i.e.: "Chemical, Biological, Radiological and Nuclear Defense System" (Exhibit No. 32, pages 32-1 through 32-4 - copy of the original computer printout. P.S. Hereinafter all Web-page printouts are the true and correct copies of the original computer printouts) Web-page: {http://www.lockheedmartin.com/wms/findPage.do?dsp=fec&ci=11412&rsbci= 0&fti=0&ti=0&sc=400}; "Full Spectrum Force Protection Against Weapons of Mass Destruction; Warning and Reporting, Perimeter Monitoring, and Collective Protection Systems" (Exhibit No. 33, pages 33-1 and 33-2) Web-page: {http://www.lockheedmartin.com/ data/assets/1747.pdf}; "NBC Defense Systems - Military video" (Exhibit No. 34) Web-page: {http://www.lockheedmartin.com/wms/findAsset.do?ai=1072&dsp=fa} is temporarily unavailable; "Mul-tipurpose Integrated Chemical Agent Alarm System (MICAD); Digitizing the Nuclear, Biological, and Chemical (NBC) Battlefield" (Exhibit No. 35, pages 35-1 and 35-2) Web-page: {http://www.lockheedmartin.com/data/assets/1749.pdf}; "BAWS; Biological Aerosol Warning System" [including "Tier" family] (Exhibit No. 36, pages 36-1 and 36-2) Web-page: {http://www.lockheedmartin.com/data/assets/1537.pdf}; "CBREWS; Chemical, Biological and Radiological Early Warning System" (Exhibit No. 37, pages 37-1 and 37-2) Web-page: {http://www.lockheedmartin.com/data/assets/1545.pdf}; "Building Protection Systems Integration; Tailored Solutions to Increase Protection Against Chemical and Biolo-gical Agents" (Exhibit No. 38, pages 38-1 and 38-2) Web-page: {http://www.lockhe

edmartin.com/data/assets/1544.pdf}; "MetroGuard; Family of NBC Early Warning Systems" (Exhibit No. 39, pages 39-1 through 39-4) Web-page: {http://www.lockheedmartin. com/data/asset/1541.pdf}; "NBC Defense Systems - MetroGuard video" (Exhibit No. 40-video tape earlier recorded from the computer display /the copy of the video tape is not enclosed, and available upon request/) Web-page: {http://www.lockheedmartin.com/wms/findAsset.do?ai=1073&dsp=fa}; the current printout (Exhibit No. 41) of the same Web-page: {http:// www.lockheedmartin.com/wms/findAsset.do?ai=1073&dsp=fa} noticing that the video is temporarily unavailable; and "In-Line LaserNet Fines" described in: "Lockheed Martin and FRAS Develop Autonomous LaserNet Fines for Hands-Off Lubricant Sampling" (Exhibit No. 42, pages 42-1 and 42-2) Web-pages: {http://www.lockheedmartin.com/news/ articles/022003_2.html}, and on other Web-sites: "On-line and In-line Wear Debris Detectors: What's Out There?" (Exhibit No. 43, pages 43-1 and 43-14) Web-page: {http://www. practicingoilanalysis.com/article_detail.asp?articleid=521&relatedbookgroup=Which%20gro up?}, "Spectro, Inc. Industrial Tribology Systems Frequently Asked Questions" (Exhibit No. 44, pages 44-1 and 44-11) Web-page: {http://ceweb2.uml.edu/Fall2005/eolso033/Inffaq .htm}, and E-mails from Lockheed Martin Corporation: Subject: "Call to Lockheed Martin" from January 04, 2006 (Exhibit No. 45) and FW: "LNF Question from German POC" from January 03, 2006 (Exhibit No. 46, pages 46-1 and 46-2) describe the Lockheed's systems believed operating in compliance with the method (claims 1 and 2) claimed in the US Patent No. 6,346,983.

The Comparison Chart of the claim 1 (method) of the US Patent No. 6,346,983 and Lockheed's product (systems) is presented in Exhibit No. 47 and based on the published information accessible for Plaintiff.

Considering the Lockheed's refusal to provide any financial information, the believed infringement damage (loss) has been calculated on the base of the published information including information published on the Lockheed's, DoD's and other Web-sites.

As to the best Plaintiff's knowledge during informal investigation, the price for the set (one Remote Unit /Sensor/ and one Central Station /Processing Station/) of "Biological Agent Warning Sensor (a.k.a. BAWS)" of the one of DoD's defense contractor may be approximately calculated at the amount of $59,704.64 according to the contract information described in the Department of Defense Press-Release No. 084-2, February 22, 2002 (Exhibit No. 48, pages 48-1 through 48-4) Web-page: {http://www.defenselink.mil/contracts/ 2002/c02222002_ct084-02.html} disclosing the contract amount of $14,150,000 for 237 sets of BAWS. The "Description Biological Agent Warning Sensor (BAWS)" (not a wireless communicating apparatus with the electrical cable [electrical wires] connection between Remote Station [Sensor] and Central/Base Station [Processing Unit/DELL laptop personal computer (hereinafter may be mentioned as "PC")], as it is the best understood) is presented in Exhibit No. 49, pages 49-1 through 49-3, Web-page: {http://www. dtic.mil/matris/sbir/ sttr03/a020.pdf}.

Considering that each Lockheed's Remote Station of "Biological Aerosol Warning Sys-

tem (BAWS)" includes the wireless communication, which required addition of the wireless communicating means - hardware (generally: wireless transmitting-receiving means, information converting means, remote station's identification number coding-decoding means, antennas, etc.), a software for two-way wireless communication application, etc., the price for each Remote Station may be approximately estimated at the amount of $60,000.00-$65,000.00.

The price for one Base/Central Station based on the laptop PC additionally including the wireless communicating attachment; a software for two-way wireless communication application; control software; displaying, graphic analyzing tool software, etc. may be approximately calculated at the amount of $10,000.00.

Therefore, the price for each BAWS' set of six Remote Stations (according to Lockheed's drawing published in Exhibit No. 36) and one Base Station may be approximately estimated at the amount of $370,000.00-$400,000.00.

The price for each CBREWS set of six Remote Stations (according to Lockheed's drawing published in Exhibit No. 37), one Base Station and one Command Station may be approximately estimated at the amount of $382,000.00-$412,000.00, where the price for one Command Station based on laptop computer additionally including the wireless communicating attachment; a software for two-way wireless communication application; control software; displaying, graphic analyzing tool software (additionally including the commanding displaying, graphic analyzing tool software), etc. is approximately may be estimated at amount of $12,000.00.

-11-

The price for each Building Protection Systems Integration (according to Lockheed's drawing published in Exhibit No. 38, showing the use of CBREWS) may be approximately estimated at the amount of $382,000.00-$412,000.00.

The price for each "MetroGuard" set of six Remote Stations (according to Lockheed's drawing published in Exhibit No. 39), one Base Station and one Command Station may be approximately estimated at the amount of $382,000.00-$412,000.00.

The presented herein above calculations are very conservative considering that they are made on the basis of the prices of parts, components, materials, etc., for commercial systems (the prices for parts, components, materials, etc., used in the military systems are much higher considering the higher climatical [temperature, humidity, etc.], mechanical [impact, vibration, etc.] influence resistance, better tolerance of characteristics of the electrical/electronic components, system and parts/components/material reliability, etc.).

There is difficult to estimate the damage for infringing "Multipurpose Integrated Chemical Agent Alarm System (MICAD)" (Exhibit No. 35), "LaserNet Fines" (Exhibits No. 42 through No. 44), UAV, etc., therefore, the prices for MICAD, "LaserNet Fines", and UAV have not been included in the believed damage and the amount of the damage may be timely calculated later after formal Discovery and/or during jury trial.

The Lockheed's infringing product is used by DoD in USA and Europe (Lockheed launched some infringing system systems in Europe as it is announced during Lockheed's video [Exhibit No. 40]), distribution to NATO (Exhibit 50, pages 50-1 and 50-2) Web-pa-

ge: http://www.lockheedmartin.com/wms/findPage.do?dsp=fec&ci=1170 0&rsbci=0&fti=0
&ti=0&sc=400).

Additionally, the believed damage by the DoD's use of the infringing product does not include the unknown Lockheed's income (profit) caused by the some additional contracts, for example, such as the amount of $890,000.00 announced in Exhibit 50. The damage estimations also should include the advantages of convenience (no electrical cable tracing necessity), mobility (communication between Remote Sensor and Central Station by electrical cables /wires/ can be provided within the distance range of a few hundred yards, but the wireless communicating apparatus provides communication within unlimited distance), reliability (elimination of the possible damage/destruction to/of the "on ground, "under ground", etc. electrical cable and necessity to disconnect cable from both sides and repair it on site /in the hazardous area/ or disconnect the electrical cable from both sides, delivery them to the repair station, and after repair to trace cable again), and priceless human/operator(s) safety during operator's activity/operation in the possible hazardous area(s) [the wireless system's operator(s) are located far away from the hazardous area /where the Remote Stations is located/ unlimitedly farther than a few hundred yards, as it is happened with the electrical cable(s) communication]), etc.

Additionally, the damage estimations should include the Plaintiff's achievement recognition moral damage and emotional distress caused by the believed DoD's misrepresentation of the achievements claimed in the Plaintiff's US Patent No. 6,346,983, as the Defendants'

-13-

achievements (Exhibits **B**, **C**). {P.S. All exhibits, printed-out of the Web-site(s) and/or Web-page(s), are true and correct copies of the appropriate Web-site(s) and/or Web-page(s)}.

The approximately estimated damage by infringement (without consideration of the damage made by MICAD, "LaserNet Fines", UAV, by other systems operating by Patents-In-Suit, etc., and without consideration of the emotional distress) claimed in the Related Case is $154,500,000.00 on the Yufa's '983 patent only (the damage by infringement on the Yufa's '769 patent is not considered).

**7)** At the same time on approximately July 05, 2005, Plaintiff - Dr. Aleksandr L. Yufa, inventor of the other US Patent No. 6,034,769 (Exhibit No. 51) had discovered in the Lockheed's Patent Application Publication No. 2004/0043443A1 (Exhibit No. 2) and Lockheed's US Patent No. 6,777,228 (Exhibit No. 3) the information about particle size determination based on the duration of the output (for example, such as electrical signal /e.g. pulse/, etc.) by a light sensing/detecting means (for example, such as photodetector), disclosed in the method (claims 1 through 3) of the Plaintiff's US Patent No. 6,034,769 (Exhibit No. 51). The US Patent No. 6,034,769 (Exhibit No. 51) has been attached to the first mail communication to Lockheed from July 07, 2005 (Exhibit No. 4).

There is difficulty to estimate the price for particle detecting means (device(s)), because as it is stated in the Lockheed Martin Corporation's letter from December 08, 2005 (Exhibit No. 15) the particle detection means have acquired from the vendor(s). Lockheed non-cooperating, and acting not in a good faith has refused to provide Yufa with prices for par-

-14-

ticle detection means. Therefore, the damage for the DoD's use of the particle detecting devices (a.k.a. as "Airborne Particle Counter", APC, etc.) operating by the method (claims 1 through 3) of Yufa's '769 patent should be included in the believed damage, and the total amount of damage caused by the believed infringement of the US Patents Nos.: 6,034,769 (Exhibit No. 51) may be timely determined later during formal Discovery and/or defined by the Court during a jury trial.

**8)** Based on the information, fact(s), document(s), and evidence(s) disclosed above, it is believed, that DoD uses all described herein Lockheed's systems (apparatus, devices, means, etc.) operating at least by the method (claims 1 and 2) claimed in the US Patent No. 6,346,983, and at least BAWS, CBREWS, "Building Protection Systems Integration", and at least "MetroGuard" also operating by the first method (claims 1 through 3) claimed in US Patent No. 6,034,769, thereby, as it is believed, infringing Yufa's US Patents Nos.: 6,346,983 and 6,034,769.

Lockheed has indirectly confirmed the infringement of the Yufa's '983 and '769 patents:

a) in Lockheed's correspondence (letters) to Yufa Lockheed indirectly confirmed the operation of Lockheed's systems used by DoD in compliance with the Yufa's '983 and '769 patents (Yufa's Complaint in the related case);

b) by Lockheed's statement that Lockheed's product "read on patent" (Joint Rule 26(f) Report in the related case);

c) by applying Lockheed's systems as a prior art under 35 U.S.C. 102(b),(g) for

Yufa's '983 and '769 patents invalidity (documents in the related case);

d) by making contradicted/opposite statements during informal investigation and during litigation. It is axiomatically proven that one of the opposite statements is a false statement. The fact, that Lockheed made the same contradict/opposite statements not once but multiple times, proves that Lockheed made its false statement(s) intentionally (documents in the related case).

Based on the information, that DoD and, as it is believed, its officer(s)/employee(s) are the long time subscriber(s)/recipient(s) of the "CleanRoom" magazine, it is believed, that DoD had a knowledge of the Yufa's '983 patent at least from June 2002. The brief description with the patent number of the Yufa's '983 patent has been published in "CleanRoom" "The Magazine of Contamination Control Technology", Volume 16, No. 6, June 2002 (Exhibit **D** - a true and correct copy of the front page of "CleanRoom" magazine, and Exhibit **E** - a true and correct copy of the page 20 of that magazine with the Yufa's '983 patent announcement/description).

Based on these facts, it is believed, that the DoD's infringement of at least Yufa's '983 patent is willful infringement at least from June 2002.

Based on the information, fact(s), document(s), and evidence(s) disclosed above, on the materials/documents disclosed by Lockheed during formal Discovery and presented in the related case, and on the Lockheed's activity during litigation, it is believed, that DoD has used and does use all described herein Lockheed's systems and possibly manufactures the

-16-

systems operating by Yufa's '983 and '769 patents, and/or uses the other systems manufactured by the other defense contractor(s) unknown at this time to Plaintiff.

**9)** Based on the available documental evidence(s), it is strongly believed, that there is a conspiracy of DoD and its defense contractor(s) against Plaintiff, and as a result of that conspiracy DoD has refused to fully cooperate in the Plaintiff's informal investigation.

**10)** It is believed, that Plaintiff could not and cannot not demand the cease and desist of the use of the mentioned above infringing product (system(s), apparatus, device(s), means, etc.), because the infringing product is intended for human protection.

**11)** Under the law *[Knorr-Bremse v. Dana Corp., 383 F3d 1337 (Fed. Cir. 2004)]*, a person have a duty of due care to determine whether or not person infringe any in-force patents before to make, use, sell, and offer for sale the product infringing any in-force patents. {P.S. The word "person" has a wide meaning, including but not limited to: individual(s), business(es), corporation(s), organization(s), etc., and a singular or plural and vice versa meaning appropriately - Yufa's remark}, and in compliance with 35 U.S.C. 273(b)(4):

> "... A person asserting the defense under this section
>
> shall have the burden of establishing the defense by
>
> clear and convincing evidence."

**12)** The U.S. Patents Nos. 6,346,983 and 6,034,769 are under reexamination in the US Patent and Trademark Office (started in December 2006), and the related case No. CV06-3923 GPS (FFMx) is ordered to stay pending Re Patents-In-Suit reexamination.

**13)** In compliance with the law - 35 U.S.C. 273(b)(1) - the defendant has to defend, i.e.:

"... It shall be a defense to an action for infringement ..."

The first-listed Defendant - U.S. Department of Defense has not declared a non-infringement, therefore, U.S. Department of Defense has failed to defend by non-declaring a non-infringement {DoD has failed to defend from July 20, 2007 to the present date by non-declaring a non-infringement (non-responding with defense to the Plaintiff's notifying letters: to the Yufa's letter of July 20, 2007 [Exhibit **A**] and to the Yufa's Brief Follow-Up Letter of September 25, 2007 (Certified Mail # 7007 0710 0001 9444 0790) [Exhibit **F**], wherein Exhibit **F** is a true and correct copy of the Yufa's Brief Follow-Up Letter of September 25, 2007}.

**14)** As a result, the believed Defendants' infringement by using the product believed operating by the method (Claims 1 and 2) claimed in the US Patent No. 6,346,938 and by the method (Claims 1 through 3) claimed in the US Patent No. 6,034,769 has caused the Plaintiff's substantial unspecified monetary income damage (loss), moral damage and emotional distress.

**WHEREFORE**, Plaintiff prays for and demands a judgement against Defendants for damage, caused by the continued infringement, in the sum/amount specified/accounted by Jury/Court, a judgement against Defendants for an emotional distress, caused by the continued infringement and misrepresentation of Plaintiff's achievements as Defendant's achieve-

-18-

ments, in the sum/amount specified/accounted by Jury/Court, an assessment of interest and cost against Defendants, as well as a finding of willful infringement sufficient to warrant an award of attorneys' fees.

JURY TRIAL DEMANDED

February 25, 2008

**Aleksandr L. Yufa**, Ph.D.
698 Cypress Avenue,
Colton, CA 92324-1952
**Plaintiff IN PRO-SE**

**DEMAND FOR JURY TRIAL**

CIVIL COVER SHEET

JS-44
(Rev.1/05 DC)

| I (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| ALEKSANDR L. YUFA | U.S. DEPARTMENT OF DEFENSE, ETAL |
| **(b)** COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF 88888<br>(EXCEPT IN U.S. PLAINTIFF CASES) | COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT 11001<br>(IN U.S. PLAINTIFF CASES ONLY)<br>NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED |

**(c)** ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

ALEKSANDR L. YUFA          (In Pro-Se)
698 CYPRESS AVENUE,
COLTON, CA 92324, (909) 370-4454

Case: 1:08-cv-00330
Assigned To : Leon, Richard J.
Assign. Date : 2/26/2008
Description: Pro Se general Civil

## II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

- O 1 U.S. Government Plaintiff
- ⊙ 2 U.S. Government Defendant
- O 3 Federal Question (U.S. Government Not a Party)
- O 4 Diversity (Indicate Citizenship of Parties in item III)

## III CITIZENSHIP OF PRINCIPAL PARTIES (PLACE AN x IN ONE BOX FOR PLAINTIFF AND ONE BOX FOR DEFENDANT) FOR DIVERSITY CASES ONLY!

| | PTF | DFT | | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ⊙ 1 | O 1 | Incorporated or Principal Place of Business in This State | O 4 | ⊙ 4 |
| Citizen of Another State | O 2 | O 2 | Incorporated and Principal Place of Business in Another State | O 5 | O 5 |
| Citizen or Subject of a Foreign Country | O 3 | O 3 | Foreign Nation | O 6 | O 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

**O A. Antitrust**
- ☐ 410 Antitrust

**O B. Personal Injury/ Malpractice**
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury
- ☐ 362 Medical Malpractice
- ☐ 365 Product Liability
- ☐ 368 Asbestos Product Liability

**O C. Administrative Agency Review**
- ☐ 151 Medicare Act

Social Security:
- ☐ 861 HIA ((1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g)
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g)

Other Statutes
- ☐ 891 Agricultural Acts
- ☐ 892 Economic Stabilization Act
- ☐ 893 Environmental Matters
- ☐ 894 Energy Allocation Act
- ☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

**O D. Temporary Restraining Order/Preliminary Injunction**

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

**O E. General Civil (Other)        OR        ⊙ F. Pro Se General Civil**

Real Property
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent, Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

Personal Property
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

Bankruptcy
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

Prisoner Petitions
- ☐ 535 Death Penalty
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition

Property Rights
- ☐ 820 Copyrights
- ☒ 830 Patent
- ☐ 840 Trademark

Federal Tax Suits
- ☐ 870 Taxes (US plaintiff or defendant
- ☐ 871 IRS-Third Party 26 USC 7609

Forfeiture/Penalty
- ☐ 610 Agriculture
- ☐ 620 Other Food &Drug
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 630 Liquor Laws
- ☐ 640 RR & Truck
- ☐ 650 Airline Regs
- ☐ 660 Occupational Safety/Health
- ☐ 690 Other

Other Statutes
- ☐ 400 State Reapportionment
- ☐ 430 Banks & Banking
- ☐ 450 Commerce/ICC Rates/etc.
- ☐ 460 Deportation

- ☐ 470 Racketeer Influenced & Corrupt Organizations
- ☐ 480 Consumer Credit
- ☐ 490 Cable/Satellite TV
- ☐ 810 Selective Service
- ☐ 850 Securities/Commodities/ Exchange
- ☐ 875 Customer Challenge 12 USC 3410
- ☐ 900 Appeal of fee determination under equal access to Justice
- ☐ 950 Constitutionality of State Statutes
- ☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

| | | | |
|---|---|---|---|
| ○ **G. Habeas Corpus/ 2255** | ○ **H. Employment Discrimination** | ○ **I. FOIA/PRIVACY ACT** | ○ **J. Student Loan** |
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment<br>(criteria: race, gender/sex,<br>national origin,<br>discrimination, disability<br>age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions<br>(if Privacy Act)<br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted<br>Student Loans<br>(excluding veterans) |

| | | | |
|---|---|---|---|
| ○ **K. Labor/ERISA (non-employment)** | ○ **L. Other Civil Rights (non-employment)** | ○ **M. Contract** | ○ **N. Three-Judge Court** |
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting &<br>Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights<br>Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-<br>Employment<br>☐ 446 Americans w/Disabilities-<br>Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment &<br>Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of<br>Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting<br>(if Voting Rights Act) |

**V. ORIGIN**

◉ 1 Original Proceeding   ○ 2 Removed from State Court   ○ 3 Remanded from Appellate Court   ○ 4 Reinstated or Reopened   ○ 5 Transferred from another district (specify)   ○ 6 Multi district Litigation   ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION** (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)
CHAPTERS 28 AND 29 OF TITLE 35 UNITED STATES CODE (PATENT INFRINGEMENT)

**VII. REQUESTED IN COMPLAINT**   ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23   DEMAND $ unspecified   Check YES only if demanded in complaint   JURY DEMAND:  YES ☒  NO ☐

**VIII. RELATED CASE(S) IF ANY**   (See instruction)   YES ☒   NO ☐   If yes, please complete related case form.

DATE 02/25/2008   SIGNATURE OF ATTORNEY OF RECORD _____

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.   COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.  CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.  CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.  CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII. RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.

*UNITED STATES DISTRICT COURT*
*FOR THE DISTRICT OF COLUMBIA*

**ALEKSANDR L. YUFA**

Plaintiff(s)

vs.

**U.S. DEPT. OF DEFENSE**

Defendant(s)

Civil Case No: **08-330(RJL)**

## <u>NOTICE REGARDING BULKY EXHIBIT</u>

Pursuant to the procedures for filing documents electronically.  This notice serves as

notification of bulky notice of exhibitst has been filed in paper form in the Clerk's Office.

It is available for public viewing and copying between the hours of 9:00 a.m. and 4:00

p.m., Monday through Friday.

**NANCY MAYER-WHITTINGTON**

Clerk